IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 1:21-CR-394** |
| v. | (Judge Conner) |
| **JOSE ALVAREZ-CARRILLO,** | |
| **Defendant** | |

**MEMORANDUM**

Defendant Jose Alvarez-Carrillo moves to reveal the identity and location of a confidential informant. We will grant the motion.

I. **Factual Background & Procedural History**

A federal grand jury returned an indictment charging Alvarez-Carrillo with distribution of methamphetamine on April 28 and May 4, 2021, and possession with intent to distribute methamphetamine on May 19, 2021. Alvarez-Carrillo entered a plea of not guilty to the indictment. He subsequently filed the present motion to compel the government to reveal the identity and location of a particular confidential informant. The motion is fully briefed and ripe for disposition.

II. **Discussion**

Underlying the charges against Alvarez-Carrillo are two controlled purchases of methamphetamine conducted by law enforcement through a confidential informant on April 28 and May 4, 2021, respectively.[1] (See Doc. 35 at 3; Doc. 36 at 2;

---

[1] The indictment provides little detail as to the manner and means by which Alvarez-Carrillo allegedly committed the crimes of which he is accused. (See Doc. 1). Consequently, we rely on the parties' representations in their briefs as to the relevant underlying facts. Should the alleged facts differ, we assume solely for purposes of this motion that the facts proffered by Alvarez-Carrillo are true.

see also Doc. 1). Alvarez-Carrillo requests the court compel the government to disclose the identity and location of the informant in advance of trial so he can investigate a possible entrapment defense. (See Doc. 37 at 3). According to Alvarez-Carrillo, the informant arranged the narcotics transactions at issue, provided the methamphetamine to Alvarez-Carrillo prior to the transactions, and ultimately purchased the methamphetamine back from Alvarez-Carrillo during the controlled buys. (See id.) Alvarez-Carrillo suggests the informant engaged in this self-dealing scheme as a means of setting up Alvarez-Carrillo to "work[] off some charge or debt to the police." (See id. at 3-4). Alvarez-Carrillo avers he and the informant were the only people directly involved in the transactions. (See id.) He alleges this same informant supplied the additional quantities of methamphetamine law enforcement found in his home. (See Doc. 37 at 3).

The government possesses a qualified privilege to protect the identity of its confidential informants. See Roviaro v. United States, 353 U.S. 53, 59 (1957). This privilege "serves important law enforcement objectives, most significantly, the public interest in encouraging persons to supply the government with information concerning crimes." United States v. Brown, 3 F.3d 673, 693 (3d Cir. 1993) (citing Roviaro, 353 U.S. at 59). However, the privilege is not absolute and must give way whenever "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." United States v. Jiles, 658 F.2d 194, 196 (3d Cir. 1981) (citing Roviaro, 353 U.S. at 60-61).

The burden rests with the defendant to show the need for disclosure of an informant's identity.  See id. at 197.  There is no fixed rule in determining when disclosure is required; rather, the court must, on a case-by-case basis, balance the defendant's claimed need for disclosure against the public's interest in protecting government informants.  See id. at 196 (citing McCray v. Illinois, 386 U.S. 300, 311 (1967)).  Mere speculation, however, that an informant possesses some knowledge useful to the defendant is insufficient to justify disclosure.  See United States v. Bazzano, 712 F.2d 826, 839 (3d Cir. 1983) (citation omitted).  Ultimately, the decision to compel disclosure of an informant's identity is a matter committed to the trial court's discretion.  See United States v. Gatlin, 613 F.3d 374, 379 (3d Cir. 2010) (citing United States v. Johnson, 302 F.3d 139, 149 (3d Cir. 2002)).

The first step in our analysis is to ascertain whether Alvarez-Carrillo has shown a specific need for disclosing the informant's identity.  See Jiles, 658 F.2d at 197. We find Alvarez-Carrillo satisfies the specificity requirement.  He provides a detailed explanation of the defense he seeks to pursue—entrapment—and how the informant is essential to ascertaining the viability of that defense.  Other than Alvarez-Carrillo, the informant is the only individual with knowledge of the nature and structure of the transactions that took place on April 28 and May 4, 2021.  There is no other pathway for Alvarez-Carrillo to ascertain, prior to trial, whether an entrapment defense is applicable outside of interviewing the informant.

The second step in our analysis is to balance "the public interest in protecting the flow of information against the [defendant's] right to prepare his defense."  See Jiles, 658 F.2d at 196 (citing Roviaro, 353 U.S. at 62).  In balancing

3

these competing interests, we must weigh "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id.  The need for disclosure is especially acute when "(1) the possible testimony was highly relevant; (2) it might have disclosed an entrapment; (3) it might have thrown doubt upon the defendant's identity; and (4) the informer was the sole participant other than the accused, in the transaction charged." Jiles, 658 F.2d at 198-99 (citing McCray, 386 U.S. at 310-11; Roviaro, 353 U.S. at 63-65); see also United States v. Rivera, 524 F. App'x 821, 827 (3d Cir. 2013) (nonprecedential) (citing Jiles, 658 F.2d at 198-99).

Three of the four enumerated circumstances are present in the matter at hand.  The informant's testimony is highly relevant to the charges against Alvarez-Carrillo; indeed, the informant is the only direct witness to many key events aside from Alvarez-Carrillo.  (See Doc. 35 at 3).  Alvarez-Carrillo proffers an entrapment

4

defense.[2] (See id.) And the informant was allegedly the sole participant other than Alvarez-Carrillo in the transactions at issue. (See id.) In sum, Alvarez-Carrillo's need falls squarely within the circumstances where disclosure is heavily favored.

We acknowledge that, in certain circumstances, a court may deny disclosure—notwithstanding an articulated and specific need—due to concern for the informant's safety. See Jiles, 658 F.2d at 198-99. Once a defendant establishes a compelling need for disclosure, however, the government must do more than invoke its generalized interest in encouraging informants to come forward and share what they know. See id. at 198 (citing United States v. Ayala, 643 F.2d 244,

---

[2] The government contends the scenario Alvarez-Carrillo presents cannot possibly support an entrapment defense. (See Doc. 36 at 6). We disagree. Initially, courts simply do not apply much scrutiny to the defendant's proffered defense when considering motions for disclosure. See Jiles, 658 F.2d at 198 (disclosure of informant's identity may be required if "it *might* disclose[] an entrapment" (emphasis added)). The government does not cite, and we are not aware of, any authority requiring the defendant to establish the ultimate viability of their entrapment defense prior to disclosure. In any event, we do not find Alvarez-Carrillo's entrapment defense to be categorically impossible. Entrapment is available as a defense when "the government's own agent" is so involved in, and in control of, a drug transaction that the government's conduct "passe[s] the point of toleration." United States v. West, 511 F.2d 1083, 1085 (3d Cir. 1975) (agent "set the accused up in illicit activity by supplying him with narcotics and then introduce[d] him to another government agent as a prospective buyer"); see also United States v. Twigg, 588 F.2d 373, 377-79 (3d Cir. 1978) (stating "the principles enunciated [in West] remain sound today" notwithstanding holding in Hampton v. United States, 425 U.S. 484 (1976), that predisposition bars entrapment defense); United States v. Wright, 921 F.2d 42, 45 (3d Cir. 1990) (assuming without deciding "heavy governmental involvement from the inception of the transaction" satisfies defendant's burden as to inducement); see also, e.g., United States v. Mayfield, 771 F.3d 417, 434 (7th Cir. 2014) (explaining "'subtle, persistent, or persuasive' conduct by government agents or informants may qualify as an illegitimate inducement" (quoting United States v. Pillado, 656 F.3d 754, 765 (7th Cir. 2011))). Whatever reservations we might have about the ultimate viability of Alvarez-Carrillo's entrapment defense, it would be inappropriate to bar him *ab initio* from discovering evidence that might support (or undermine) such a defense.

247 (5th Cir. Unit A Apr. 1981) (denying disclosure requires government to raise more than "general concerns for the free flow of information"). The government identifies no such concern whatsoever in the matter *sub judice*, much less the "very high risk of physical harm to the particular informant" our court of appeals has previously found to outweigh a defendant's specific need for disclosure. See id. at 198. Under the circumstances, the government has not shown that the public interest outweighs Alvarez-Carrillo's specific need for disclosure to prepare his defense. See id. at 197.

### III. Conclusion

We will grant Alvarez-Carrillo's motion to reveal the identity and location of the confidential informant. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER<br>
Christopher C. Conner<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated:    January 3, 2023